FILED

2005 Sep-28  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| OLIVIA STANDIFER, individually and on behalf of all persons similarly situated, | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | Case No.  7:02-cv-00446-HGD |
| FRANKLIN COLLECTION SERVICES, INC., | ) ) ) | |
| Defendant | ) ) | |

## FINAL ORDER

Pursuant to the August 5, 2005, Preliminary Approval Order conditionally approving of the settlement of this class action, the Court set a hearing for September 19, 2005, at 10:00 a.m. to consider among other things:  (a) whether the proposed settlement of this action was fair, reasonable and adequate, was consistent with the Constitution of the United States and should be approved by this Court; (b) whether the notice provided to the class met the requirements of Federal Rule of Civil Procedure 23(b)(3) and the Constitution of the United States; (c) whether this Court should enter a final judgment approving the settlement, dismissing the action and enjoining and prohibiting the filing of further litigation with respect to, or based upon, the claims released in the Stipulation of Settlement; and (d) whether this Court

should approve the fee petition submitted by Class Counsel. After individual notice to the Settlement Class Members, and an opportunity to submit objections, argument, and evidence in support of or in opposition to the proposed settlement, the Court held a Final Fairness Hearing in open court on September 19, 2005, at 10:00 a.m.

The Court, at the Final Fairness Hearing, heard argument and received evidence and made its own determinations regarding the credibility of such evidence. Furthermore, the Court has reviewed carefully the Stipulation of Settlement, and the parties' motions, briefs, and evidence in support of Final Approval. Having fully considered all of the evidence, the Stipulation of Settlement, the legal standards under which this Court must evaluate the proposed settlement, the pleadings and earlier filings in this case, and the arguments and briefs submitted by the parties, the Court makes the following findings:

## I.    PROCEDURAL HISTORY AND FINDINGS OF FACT.

On February 2, 2002, plaintiff Olivia Standifer ("Standifer" or "Plaintiff") filed her individual and class action complaint alleging that Franklin Collection Service, Inc., ("Franklin or "Defendant") violated § 1692e of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., ("FDCPA") by requiring her, and other similarly situated persons, to enter into a "deceptive consolidation agreement" that failed to accurately disclose to her, and other similarly situated persons, the true

amount of interest they were paying in connection with the agreement.  Franklin answered the complaint, denied any wrongdoing, and asserted various affirmative defenses to Standifer's individual and class action claims.

Standifer also alleged that Franklin's debt consolidation agreement failed to provide the disclosures required by the Truth in Lending Act, 15 U.S.C. § 1601, et seq., and Regulation Z, 12 C.F.R. § 226 ("TILA") including the amount financed, a brief description of the amount of credit provided, a separate written itemization of the amount financed, the finance charge, and the correct annual percentage rate. Franklin answered the complaint, denied any wrongdoing, and asserted various affirmative defenses to Standifer's individual and class action claims.

On September 4, 2003, this Court entered an Order recommending that this action be certified as a Rule 23(b)(3) class action and that the class should be defined as:

> All persons in the United States who, from February 1, 2001, through February 1, 2002, have entered into debt consolidation agreements with Franklin Collection Services (sic), Inc. wherein the agreements violated the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., and Regulation Z, 12 C.F.R. 226, et seq., by failing to correctly disclose the amount financed, an itemization of the amount financed, the finance charge, and/or the annual percentage rate for credit extension.
>
> All persons in the United States who, from February 1, 2001, through February 1, 2001, through February 1, 2002, have entered into debt consolidation agreements with Franklin Collection Services, (sic) Inc.

wherein the agreements violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, by misleading said persons as to the true cost of the consolidation agreement to the customer, a deceptive practice designed to induce persons to enter into said agreement.

On March 1, 2004, District Judge Sharon Blackburn accepted this Court's recommendation and certified this case as a Rule 23(b)(3) class action.

On February 15, 2005, Franklin received an independent auditor's report from Lindsey, Davis and Caviness, Certified Public Accountants, for the year ending December 31, 2004. (Thomas Decl. ¶ 5). The audit confirmed that, as of December 31, 2004, Franklin's net worth was $1,702,701. (Thomas Decl. ¶ 5). Franklin has provided class counsel with its financial statements (audited by an outside accounting firm) which reflect that it has a net worth of approximately 1.72 million dollars. (Thomas Decl. ¶ 4).

On or around March 24, 2005, Franklin ran a search query of its computer data-base for all accounts in which the allegedly offending debt consolidation agreement was executed. Such accounts were designated with a "description code" "pf". (Thomas Decl. ¶ 3a). Franklin's search revealed that there were 914 individuals who executed the allegedly offending agreement. (*Id.* at ¶ 3b). Franklin forwarded the names and addresses of these individuals to its counsel to provide to Class Counsel. (*Id.* at ¶ 3c).

After this Court's certification decision, and despite denying any wrongdoing, Franklin considered it desirable to resolve this action in order to avoid further expense, burdensome and protracted litigation, and to purchase its peace forever from any and all claims that were or could have been asserted by Standifer or the class she represents arising out of or relating to the FDCPA, TILA, or Franklin's use of the allegedly offending debt consolidation agreement. In order to attempt to resolve the case, Franklin agreed to mediate this case before the Honorable Charles Denaburg.

On May 16, 2005, after an entire day of intense and highly contested negotiations at mediation, the parties reached a tentative partial settlement of the case. In the next several days, the parties continued to communicate separately with Mr. Denaburg in an effort to resolve the remaining outstanding issues in the case. On May 18, 2005, the parties were able to resolve the outstanding issues and settle the case in its entirety.

Between May 18, 2005, and August 1, 2005, the parties exchanged numerous phone calls, e-mails, facsimiles, and letters in finalizing the settlement agreement.

On August 1, 2005, the parties entered into a Stipulation of Settlement. The settlement provided, among other things:

(a) Franklin will discontinue the use of the debt consolidation agreement made the basis of this action; and

(b) Any class member who was sent the debt consolidation agreement will be entitled to a payment in an amount not to exceed $27.50 per individual from a settlement fund not to exceed $25,135 if they timely submit a valid Claim Form, and the Settlement Administrator determines they are eligible for monetary relief under the Stipulation of Settlement.  In return, Franklin receives a release from the class.

On August 3, 2005, the parties submitted a joint motion for preliminary approval of settlement class.

On August 4, 2005, the Court entered an Order preliminarily approving the settlement.

On August 15, 2005, Franklin gave individual notice of the class action and the settlement to the 914 class members.  (Tilghman Decl. ¶ 5).

The deadline for parties to opt-out or object to the settlement was September 9, 2005.  As of September 19, 2005, only one person has opted-out of this settlement, and no one has objected to the settlement.  (*Id.* at ¶ 7).

On September 19, 2005, this Court conducted a Fairness Hearing.  At the Hearing the Court heard oral testimony from Standifer and heard arguments from both parties regarding the propriety of the settlement.

## II.    THE NOTICE GIVEN IN THIS CASE MEETS THE REQUIREMENTS OF RULES 23(c)(2)(B) AND 23(e) AND DUE PROCESS.[1]

Rules 23(c)(2)(B) and 23(e) govern the notice requirements in a Rule 23(b)(3) settlement class.  Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the ***best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort***.  The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

_____

[1]  As this case has been previously certified, this Court deems it unnecessary to repeat the analysis justifying class certification and incorporates by reference the reasoning set forth in its September 4, 2003, Report and Recommendation and Judge Blackburn's March 1, 2004, Order accepting this Court's recommendation.  This Court finds that its certification order remains valid, that Ms. Standifer (and class counsel) remain adequate, and the class certification shall become final with this Order.

Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). In addition, Rule 23(e) "requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing." *In re Diet Drugs Prod. Liab. Lit.*, MDL No. 1203, 2005 WL 636788, at *18 (E.D.Pa. Mar. 15, 2005) (citing *Newberg on Class Actions*, § 8.32, at 8-103).

In determining whether the notice was sufficient, the Court should consider both the "mode of dissemination and its content . . . ." *In re Diet Drugs Prod. Liab. Lit.*, 2005 WL 636788, at *18. Although the "notice need not be unduly specific, . . . the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *Id*. Further, the fact that "[n]o one objecting to the settlement has raised any issue with regard to the sufficiency of notice to class members" should also be considered in determining the adequacy of the notice. *Strube v. American Equity Investment Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D.Fla. 2005).

The notice given in this case meets the requirements of Rules 23(c)(2)(B) and 23(e). Franklin used its computer database of debtors to determine all individuals who were parties to the debt consolidation agreement. (Thomas Decl. ¶ 3). Further,

a third-party, independent settlement administrator, Tilghman and Company, provided individual notice to each of the class members by using the names and addresses of the class members provided to it by Franklin and by independently validating this information by using the NCOA database. (Tilghman Decl. ¶ 5). To date, no one has objected; and only one person has opted-out of the settlement. (*Id.* at ¶ 7). Accordingly, this Court finds that the notice given to the class was adequate and meets the requirements of Rules 23(c)(2)(B) and 23(e) and Due Process.

## III.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Under Federal Rule of Civil Procedure 23(e)(1)(A), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses in a certified class." Fed. R. Civ. P. 23(e)(1)(A). To approve a proposed class settlement, the Court must find that the settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(a); *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). Judicial evaluation [of class action settlements] is guided by public policy which strongly favors the pretrial settlement of class action lawsuits. *See In re U.S. Oil & Gas Litigation*, 967 F.2d 489, 493 (11th Cir. 1992). "The Court's judgment is informed by the strong judicial policy favoring settlement as well as the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

In reviewing a settlement for fairness, adequacy and reasonableness, the Court should consider, among other things, the following factors:

1.  The likelihood of success at trial (including the likelihood of establishing liability);

2.  The range of possible recovery and the point on or below the range at which the settlement is fair, adequate and reasonable;

3.  The complexity, expense, and duration of the litigation;

4.  The substance and amount of opposition to the settlement;

5.  The stage of the proceedings at which the settlement was achieved; and

6.  The financial ability of the defendant to withstand a greater judgment and the potential for a judgment in an amount likely to trigger due process considerations.

*Bennett*, 737 F.2d at 986.

In applying these factors, the Court need not reach ultimate conclusions on the merits of the litigation. Instead, the review of the proposed settlement involves a limited inquiry into whether the possible awards of litigation with its risks and costs are outweighed by the benefits of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (stating that the trial court does not have "the right or duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."); *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) ("In examining a

proposed compromise for approval or disapproval under Fed. R. Civ. P. 23(c) the court does not try the case. The very purpose of compromise is to avoid the delay and expense of such a trial.").[2] Further, a settlement that is reached after extended arm's-length negotiations between experienced and capable counsel is also relevant to approval. *See, e.g., Cotton*, 559 F.2d at 1330 (stating that trial court is "entitled to rely on upon the judgment of experienced counsel for the parties" in evaluating settlement); *see also Conte & Newberg, Newberg On Class Actions* at § 11.47 ("recommendation of counsel is entitled to great weight following arm's-length negotiations").

**A.    The Settlement Provides the Maximum Relief that Could be Awarded at Trial.**

First, the benefit this settlement provides to the class, both in terms of injunctive and monetary relief, should be compared with the likely recovery for the class at trial. *See Cotton,* 559 F.2d at 1330. This question implicates the first two of the *Bennett* factors, which are closely related: "(1) the likelihood of success at trial; and (2) the range of possible recovery." *Bennett*, 737 F.2d at 986. This standard

---

[2] The United States Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

often justifies approving settlements that are substantial compromises of the relief that could be obtained through litigation.

This Court finds that the result obtained under the settlement is consistent with and in some respects exceeds the relief that the class could expect to obtain at trial while obviating the risks that further litigation entails.

First, the class would undertake significant risks by proceeding further with litigation.  For instance, the class might not prevail on the threshold issue of class certification on appeal.  Franklin vigorously argued against class certification and has preserved several appellate issues for review.

Second, the relief afforded to the class potentially provides the maximum recovery allowed under TILA in class actions.  Under TILA, the maximum class action damage award is limited to "the lesser of $500,000 or 1 per centum of the net worth of the creditor."  15 U.S.C. § 1640(a)(2)(B).  Further, the court, not a jury, determines the statutory damages that are awarded based on a number of factors including the persistence of noncompliance by the creditor, the creditor's resources, the number of persons adversely affected, and the extent to which noncompliance was intentional.  *See* 15 U.S.C. § 1640(a) ("In determining the amount of award in any class action, ***the court*** shall consider . . .").  These factors point to statutory damages

12

below the cap; however, the settlement provides the maximum damages.[3]  Franklin

has provided class counsel with its financial statements which reflect that it has a net

worth of approximately 1.72 million dollars.  (Thomas Decl. ¶ 4).  Therefore, the

*maximum* damage award recoverable for the class under the TILA claim is $17,200

This settlement potentially provides that relief.

There is also serious doubt that Standifer could recover on her FDCPA claim

and her TILA claim.  The statutory language appears to allow liability under only one

statute (based the liability for a "creditor" under TILA and the exemption from

liability for a "creditor" under FDCPA).  The FDCPA only applies to "debt

collectors."  15 U.S.C. § 1692.  Under the FDCPA, a "creditor" is defined as "**any

person** who offers or extends credit creating a debt **or to whom a debt is owed**, but

such term does not include any person to the extent that he receives an assignment or

transfer of a debt in default solely for the purpose of facilitating collection of such

debt for another."  15 U.S.C. § 1692a(4) (emphasis added).  The Eleventh Circuit has

held that the extension of credit is not required to meet this definition; instead, a debt

---

[3]  In its brief, Franklin noted that had this case proceeded to verdict, it would have asserted
that its conduct does not warrant the maximum statutory award because:  (1) Franklin does not
regularly engage in the transactions at issue; (2) Franklin is not in the same position to safeguard
against such inadvertent violations of TILA as, for example a large credit card or financing company;
and (3) there were only 914 people presumably affected by this alleged noncompliance with TILA.
This Court finds that these arguments are persuasive and weigh against a large statutory damage
award.

must be created.  *See Budget v. Brown Rent-A-Car Systems, Inc.*, 119 F.3d 922, 925 (11th Cir. 1997) ("the Act [FDCPA] requires no extension of credit" to be considered a debt).

Here, Standifer acknowledged that the agreement she entered into with Franklin "was a separate agreement **in lieu of** the outstanding debts owed . . . ."[4] Standifer's agreement with Franklin arguably established a new debt owed by Standifer to Franklin and extinguished her existing debts.  *See, e.g., Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) (holding that a mortgage servicing company was not a debt collector under the FDCPA when it attempted to collect on a forbearance agreement acquired from HUD where the defendant was not attempting to collect on the original note, but rather the newly established forbearance agreement); *Vitale v. First Fidelity Leasing Group*, 35 F.Supp. 2d 78, 81 (D.Conn. 1998) (holding that "[a]lthough there are allegations to suggest that [the automobile leasing and financing company] was collecting a debt, the debt was one owed to it and thus its activities are not covered by the FDCPA"), *aff'd*, 166 F.3d 1202 (2d Cir. 1998) (unpublished opinion).

---

[4] In lieu of means "[i]nstead of; in place of; in substitution of." *Black's Law Dictionary* 708 (5th ed. 1979).

Because the agreement between Franklin and Standifer arguably established a new debt, Franklin may have been acting as a "creditor," not a "debt collector," in attempting to collect the debt owed to it.  Thus, Franklin potentially could not be liable under the FDCPA because it was acting as a "creditor," not as a "debt collector," as defined by 15 U.S.C. § 1692a(4).  Of course, if Franklin were not a "creditor," it would likely not be liable under TILA.  While the Court need not decide the issue, Franklin's argument that Plaintiff cannot have it both ways (that is, that Franklin was either a "creditor" or "debt collector," not both) appears to have merit.

Second, the statutory damages awarded under the FDCPA and TILA are punitive in nature.  Assessing punitive damages pursuant to two federal statutes for the same conduct are potential violations of the excess fine clause and substantive and procedural due process.

Third, the maximum that Standifer and the class could recover under the FDCPA is $17,200.  *See* 15 U.S.C. § 1692k(a)(2)(B)(ii) ("Under the FDCPA, class action damages are limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector.").  Despite Franklin's persuasive argument that Plaintiff could not recover under the FDCPA, Franklin was willing to resolve this claim for potentially $7,935 (almost 40% more than a 100% recovery under the statute).

15

In addition, the settlement provides injunctive relief (Franklin's agreement to stop using the debt consolidation agreement at issue). Thus, the settlement potentially provides the maximum available remedy to the class under TILA, additional relief under the FDCPA, and benefits future putative debtors from whom Franklin is attempting to collect a debt.

**B.     Continued Litigation of this Case Would Have Been Expensive and Lengthy.**

The novelty of some of the issues presented in this case would have made the trial and appeal of this case expensive and lengthy. A credible projection for litigating this case through trial and appeal would be at least two to three years. *See, e.g., U.S. Oil & Gas. Lit.*, 967 F.2d at 493 ("Complex litigation--like the instant case-- can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive."). Each phase of litigation would entail substantial costs, attorney time, travel and other expenses. In short, the likely alternative to settlement now is lengthy, burdensome, and expensive litigation. The strength of the relief and the added benefit of obtaining it now rather than years from now make approval of this settlement in the best interests of the class.

### C.    No One Has Objected to the Settlement.

Although the Court must review and address such objections, "this is not to say that the trial judge is required to open to question and debate every provision of the proposed compromise." *Cotton*, 559 F.2d at 1331. The central question at issue is not whether any particular provision could have been negotiated in a slightly different or marginally more favorable way. While the number of objectors is "not controlling," *Cotton*, 559 F.2d at 1331, a relatively small number of objectors can be taken as "some indication that the class members as a group did not think the settlement was unfair." *Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 506 n.4 (5th Cir. 1981).

Here, actual notice of the settlement was given to 914 class members. (Thomas Decl. ¶ 3; Tilghman Decl. ¶ 5). As of September 16, 2005, four days after the deadline to do so, no one had objected to the settlement and only one person had opted out of the settlement. (Tilghman Decl. ¶ 7). Courts have approved settlements with far greater percentage of objectors than is present in this case. *See, e.g., Reed v. General Motors Corp.*, 703 F.2d 170, 174-75 (5th Cir. 1983) (affirming district court's approval of class settlement notwithstanding a nearly 40% objection rate). Thus, the lack of any opposition to this settlement weighs in favor of final approval.

**D.    Franklin May Not be Subject to Liability under Both Statutes.**

There appear to be two facets to this factor: the worth of the defendant and the potential for becoming entangled in a due process analysis. With respect to the first facet, Franklin has potentially provided the maximum amount of monetary relief allowed by TILA (1% of Franklin's net worth) and provided additional relief to the class under the FDCPA. To that extent, the first facet of this factor weighs heavily in favor of the proposed settlement. The second facet of this factor is a novel issue of law. Franklin contends that statutory damages are punitive in nature and, thus, awarding statutory damages under both statutes for the same conduct raises a serious due process issue. Moreover, as explained above, the statutory language appears to allow liability under only one statute (based the requirement that a party be a "creditor" under TILA and the exemption from liability for a "creditor" under FDCPA). The settlement of the case pretermits what could have been a lengthy and expensive appeal process.

**IV.    THE ATTORNEYS' FEES AND COSTS REQUESTED BY CLASS COUNSEL ARE FAIR AND REASONABLE.**

**A.    Class Counsel Undertook Risk to Prosecute this Action**.

Class Counsel requests that this Court approve an award of $80,000 for attorneys' fees and reimbursement of expenses. Class Counsel accepted and litigated

this case entirely at risk and on a contingency basis but also without any certainty that the Class would ultimately be certified or indeed that they would be appointed to represent the Class.

### B. Defendants have Agreed to Pay the Requested Attorneys' Fees and Costs.

The United States Supreme Court has indicated that the consensual resolution of attorneys' fee issues is the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. **Ideally, of course, litigants will settle the amount of the fee**.") (emphasis added). The FDCPA provides for fee awards for successful counsel for a plaintiff.

After Defendants agreed to settle the claims of the Class, Class Counsel commenced negotiations for the payment of reasonable attorneys' fees and costs in mediation. The fees and costs that Defendants have agreed to pay and support as fair and reasonable[5] were arrived at through arm's-length, contentious negotiations during mediation.

In these circumstances, the result of adversarial negotiations between the party paying the award and the attorneys receiving them is presumptively reasonable. As

---

[5] *See* Stipulation of Settlement ¶ 2.09.

the Fifth Circuit has explained, "[i]n cases of this kind, we encourage counsel on both sides to utilize their best effort to understandingly, sympathetically, and professionally arrive at a settlement as to attorneys' fees." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974). The record further demonstrates that the requested amount of fees and costs is fair and reasonable independent of the arm's-length negotiations that produced this resolution. *See* Affidavits of Class Counsel in support of their Petition for Award of Fees and Expenses.

### C.    Class Counsel Achieved Significant Relief for the Class.

In this case, the Settlement has resulted in a full statutory award of damages. In addition to this cash component of the recovery for the Class Members, the Settlement provides for injunctive relief. *See* Stipulation of Settlement ¶ 2.05(a). While it is more difficult to quantify injunctive relief, the settlement agreement does call for an injunction enjoining the Defendant from any future conduct of the type at issue in this case. Thus, the settlement protects not only the 914 Class Members but future consumers as well. Therefore, this Court finds that the attorneys' fee and expense request is fair and reasonable in light of the circumstances of this case.

20

## VI.    THE REQUESTED PRIVATE ATTORNEY GENERAL AWARD TO THE CLASS REPRESENTATIVE IS FAIR AND REASONABLE.

Defendants have agreed to pay a private attorney general award to the class representative in the amount of $1,000 to Ms. Standifer. This payment will be paid separately from funds available to the class. *See* Stipulation of Settlement ¶ 6.10.

Numerous courts have held incentive awards to class representatives to be appropriate. *See Newberg on Class Actions* § 11.38 (3d ed. 1992) and cases cited therein. Incentive awards are particularly appropriate, as here, when the class representative initiated an action which results in significant class relief and performs services such as monitoring the litigation.

## CONCLUSIONS

Based on the findings and conclusions set forth above, and after due deliberation and consideration of the totality of the circumstances, the entire record, the arguments of the parties and the Court's discretion, it is hereby ORDERED that:

1.    The terms of the settlement set forth in the Stipulation of Settlement are fair, adequate and reasonable and are therefore FINALLY APPROVED, and the full text of the Stipulation of Settlement is incorporated into this Order. Final judgment hereby is ENTERED in favor the Settlement Class. All parties are hereby ORDERED

21

to perform their obligations set forth in the Stipulation of Settlement, to the extent not already performed.

2.    Franklin, its predecessors and successors, and its present and former parents, subsidiaries, sisters, affiliates, insurers, reinsurers, instrumentalities, dealers, agents, assigners, assignees, transferors, transferees directors, officers, employees, servants, loaned agents, loaned servants, servicers and servicing agents, attorneys, or other entity of any type or description for whose acts or omissions Franklin Collection Service, Inc. may be held liable (including any entity that could claim against Defendants under a theory of contribution or indemnification) are forever discharged from any and all claims, actions, liens, demands, causes of action, obligations, damages, and liabilities of any nature whatsoever, known or unknown, of any kind or nature whatsoever, direct or consequential, foreseen or unforeseen, developed or undeveloped arising under, related to, or authorized by federal or state statutory, regulatory, or common law including, but not limited to, the FDCPA, TILA, and/or fraud, suppression, misrepresentation, deceit, and/or deceptive practices, which have been asserted, or could have been asserted in this Action. Plaintiff (including Class Members and their assigns, successors, heirs or agents) shall be forever barred from instituting, maintaining or prosecuting against Defendant, its insurers, and attorneys, any such claim, demand, action, cause of action or liability

arising under, related to, or authorized by federal or state statutory, regulatory, or common law including, but not limited to, the FDCPA, TILA, and/or fraud, suppression, misrepresentation, deceit, and/or deceptive practices, which have been asserted, or could have been asserted in this Action.

This Court finds that the Plaintiff and Class Counsel expressly understand and acknowledge that it is possible that unknown losses or claims exist or that present losses may have been underestimated in amount or severity. This Court finds that the Plaintiff and Class Counsel explicitly took this uncertainty into account in entering into this Stipulation of Settlement, and a portion of the consideration and the mutual covenants contained therein, having been bargained for between the Plaintiff and Defendant with the knowledge of the possibility of such unknown claims, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, this Court finds that the Plaintiff (including Class Members and their assigns, successors, heirs or agents) waives any and all rights arising under, related to, or authorized by federal or state statutory, regulatory, or common law including, but not limited to, the FDCPA, TILA, and/or fraud, suppression, misrepresentation, deceit, and/or deceptive practices, which she and the Class have asserted, or could have asserted in this Action, including but not limited to, all such claims related to the debt consolidation agreement or entry into such agreement.

23

3.     The failure of any Class Member who may be entitled to monetary relief under this Agreement to obtain such monetary relief shall not affect the releases under this Stipulation of Settlement or this Order, including, without limitation, the Class Members' claims, and the settlement shall retain its full, binding effect.  Efforts made by the parties as provided in this Stipulation of Settlement to locate Class Members who may have been entitled to monetary relief in this Class are deemed and determined to be fair and reasonable.  As to any Class Member who was not located, or who for any other reason did not receive notice of this Stipulation of Settlement, or who for any reason did not return a Claim Form, all rights of such Class Member to payment in this Action shall lapse and be forever forfeited, and such person shall be barred by the releases and other provisions of the Stipulation of Settlement.  Defendant shall not be required to pay any additional sums of money to the Court or to Class Members on account of the forfeiture of payments by Class Members.

4.     The named plaintiff and all members of the Settlement Class are ENJOINED and PROHIBITED from commencing or prosecuting any action, either directly, individually, representatively, or in any capacity, asserting any claims that are released under the Stipulation of Settlement and this Final Order.

5.     The Settlement Administrator shall determine, as soon as practicable, the number of valid claims that were received by him no later than November 4, 2005.

24

Pursuant to ¶ 2.06(b) of the Stipulation of Settlement, within ten (10) days after the Settlement Administrator determined the number of valid claims, Franklin and/or its insurer shall pay the total amount of the valid claims ($27.50 x number of valid claims) to the Settlement Administrator to hold in escrow until the deadline to appeal this order runs or this Court's judgment is affirmed on appeal, whichever is sooner. After the deadline to appeal this Order runs or this Court's judgment is affirmed on appeal, whichever is sooner, the Settlement Administrator shall forthwith issue the settlement checks to the eligible class members. Pursuant to ¶ 3.01 of the Stipulation of Settlement, any checks not cashed within 180 days shall be void. The amount of such uncashed checks shall revert to Franklin and/or its insurer to defray the cost of administering the settlement.

6.    Class counsel is AWARDED $80,000 in attorneys' fees and costs. Pursuant to ¶ 2.09 of the Stipulation of Settlement, Franklin and/or its insurer shall pay Class Counsel's attorney fee of $80,000 when the deadline to appeal this order runs or this Court's judgment is affirmed on appeal, whichever is sooner.

7.    The named plaintiff is AWARDED a private attorney general fee of $1,000. Franklin and/or its insurer shall pay the named plaintiff the private attorney general fee of $1,000 when the deadline to appeal this order runs or this Court's judgment is affirmed on appeal, whichever is sooner.

25

8.    The Court RESERVES, RETAINS, and MAINTAINS continuing jurisdiction over all matters relating to the Stipulation of Settlement and this Final Order, including but not limited to the consummation, validity, interpretation, effectuation, implementation and enforcement of the Stipulation of Settlement and this Final Order, and any other orders entered pursuant thereto.  Other than as expressly stated above, or in the Stipulation of Settlement or other Order entered by the Court, each party shall bear its own costs.

DONE and ORDERED this the 28th day of September, 2005.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE